UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CONNIE JOHNSON,

              Plaintiff,                       Case No. 09-11805

v.                                        Hon. Nancy G. Edmunds

CITY OF FLINT,

              Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [16]

This employment dispute comes before the Court on Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff Connie Johnson's Complaint alleges claims of sex discrimination and retaliation against Defendant City of Flint under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e, *et seq.*, and the Michigan Elliott-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws § 37.2201, *et seq.* Plaintiff also alleges a violation of the Michigan Whistleblowers' Protection Act (WPA), Mich. Comp. Laws § 15.361, *et seq.* For the reasons set forth below, Defendant's motion is GRANTED.

## I.    Facts

Plaintiff is employed by Defendant's Police Department as a patrol officer. Her twenty-plus year career with Defendant began on April 17, 1989, and she has held various positions during that time including patrol officer, community policing, mini-station operator,

inspector, internal affairs officer, and deputy chief. (Compl. ¶¶ 1, 10, 16, 19; Johnson Dep., Def.'s Mot., Ex. 10 at 80.)

On November 10, 2008, Plaintiff filed a "formal grievance" with Defendant's Director of Human Resources, Deirdre Pitts. The grievance generally complains of "overt[] and physical[] harass[ment]."[1] (Def.'s Mot., Ex. 1 at 3.) Pitts referred the grievance, "detailing ongoing harassment from Police Department personnel," to Defendant's Chief Legal Officer, Trachelle Young, to "review and advise if this falls under and violates the City's Harassment and Discrimination Policy or Violence in the Workplace Policy." (*Id.* at 2.)

Also in November 2008, Plaintiff, along with thirty other applicants, applied for two vacant positions of Deputy Chief of Police. (Pitts Dep., Def.'s Mot., Ex. 13 at 34.) Plaintiff met the minimum entrance requirements for that position and was scheduled for testing.

---

[1] Specifically the grievance complains of instances of alleged harassment including, *inter alia*, claims that: (1) officers would remark that the Inspector's Unit, to which Plaintiff was assigned, would soon be nonexistent; (2) officers, who had a "close relationship with [an] Assistant United States Attorney," did not have to testify at a July 2008 Justice Bureau hearing, and the "relationship [was used] as visible apparent harassment towards" Plaintiff; (3) a lieutenant filed an incident report contending that members of the Inspector's Unit were violating department policy, when the lieutenant himself violated the same policy just a week later; (4) two sergeants, Hamilton and Hetherington, blamed Plaintiff for their reassignment within the department; (5) the union president and other officers "openly spoke against the Inspector['s]" Unit; (6) other officers would laugh and joke about Plaintiff when she walked by them; (7) an officer would not call off a stolen car chase at Plaintiff's request because "'we don't call off chases for an Inspector'"; (8) officers would block Plaintiff from "walking in and out of doors and elevators"; (9) an officer called her a "lesbian bitch," "tried to run into [her] in the ... parking lot ... while driving his personal vehicle ... got out of his car looked at [her] and laughed," would glare at her in the hallways, and made other comments; (10) officers "put different memos in the union window box" speaking out against the Inspector's Unit; (11) an officer belched in Plaintiff's face and "looked at [her] while ... driving ... and laughed while grabbing his crotch and shaking it"; and (12) an officer "called the alarm company and had [her] ... [access] card turned off," and also "had his sister go to the mayor's office [and to police mini-stations] and make numerous complaints about [Plaintiff] that were untrue." (Def.'s Mot., Ex. 1 at 3-8.)

(Def.'s Mot., Ex. 2.) The application and testing process, however, was interrupted by a "class action lawsuit" alleging that Defendant's Mayor, Donald Williamson, unilaterally attempted "to change the minimum requirements of the position without collectively bargaining the changes." (Def.'s Mot. at 8.) Soon thereafter, Mayor Williamson voluntarily resigned. In January 2009, before his resignation became effective, Mayor Williamson provisionally appointed Plaintiff to the position of Deputy Chief. (Pitts Dep., Def.'s Mot., Ex. 13 at 34.)

Less than one month later, interim Mayor Michael Brown appointed Alvern Lock as the new Chief of Police—the city's fourth chief in a one-year period. (Compl. ¶ 43; Def.'s Mot. at 9.) In an attempt to address budgetary issues and the Police department's overall "dire" financial condition, Lock laid off all deputy chiefs, including Plaintiff. (Lock Dep., Def.'s Mot., Ex. 12 at 10-12, 40; Compl. ¶ 45.) On February 19, 2009, Lock signed a layoff notification informing Plaintiff that her provisional appointment as deputy chief was ending and that she was entitled to "bump" back into the position of patrol officer. (Def.'s Mot., Ex.

4.) According to Plaintiff, she was not offered her prior position in Internal Affairs.[2] Instead she was assigned to patrol the North end of the city.[3] (Compl. ¶¶ 46, 51.)

The same day the layoff notification was issued, Plaintiff went on medical leave. (Compl. ¶ 50.) By April 28, 2009, Plaintiff had not been released to work by her physician and Defendant notified her that she would begin leave without pay status on May 15, 2009. (Def.'s Mot., Ex. 5.) Plaintiff returned to work on September 8, 2009.

On March 2, 2009, while Plaintiff was on leave and eleven days after being informed that her provisional appointment as deputy chief had ended, she filed an EEOC complaint alleging instances of gender discrimination beginning June 1, 2008. (Def.'s Mot., Ex. 6.) On March 26, 2009, Plaintiff filed another EEOC complaint alleging retaliation in addition to gender discrimination and included additional instances of discrimination dating back to December 2006. (Def.'s Mot., Ex. 7.)

---

[2] Plaintiff contends that she was not assigned a patrol partner. Lock testified that:
> ... and at that point I said, "Well, you known, I can't–you'll have to go back to being an officer," I said, "because you haven't held any of these other ranks, so I can't put you in any of these ranks."
> And at that point, you know, she said, "Well, you know, can I go back to being–into internal affairs?" And at that point I informed her that I couldn't put her in internal affairs because I was going to have a sergeant do that because if I had a sergeant there, the sergeant could investigate officers. An officer can't investigate another officer. I wanted to explain that to her.

(Lock Dep., Def.'s Mot., Ex. 12 at 22.)

[3] Lock testified that:
> And that's, you know, when we got into the conversation about her being harassed and she being fearful of being out there by herself. And I told her I wouldn't put her out there by herself. I wouldn't want her to be out there by herself, and that's when I asked her was there anyone in the department that she felt comfortable with.

(Lock Dep., Def.'s Mot., Ex. 12 at 23.)

On May 11, 2009, Plaintiff filed a complaint in the United Stated District Court for the Eastern District of Michigan. [Docket Text # 1.] The Complaint alleges claims of sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e, *et seq.*, and the Michigan Elliott-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws § 37.2201, *et seq.* The Complaint also alleges a violation of the Michigan Whistleblowers' Protection Act (WPA), Mich. Comp. Laws § 15.361, *et seq.*

This matter comes before the Court on Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

## II.    Summary Judgment Standard

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

5

The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

## III.   Analysis

In the Complaint, Plaintiff alleges violations of Title VII and Michigan's ELCRA in the form of discrimination (hostile work environment and disparate treatment) and retaliation, and alleges a violation of the Michigan Whistleblowers' Protection Act (WPA).[4] Defendant denies that Plaintiff was discriminated or retaliated against on the basis of sex and also denies any violations of the WPA.

This Court first discusses Plaintiff's sex discrimination claims, followed by her retaliation and WPA claims.

### A.  Sexual Discrimination Claims

Plaintiff alleges she was discriminated against because of her sex under two alternate theories—hostile work environment and disparate treatment—and filed suit under both Title VII and Michigan's ELCRA. (Compl. ¶¶ 15, 23.) Claims of discrimination brought pursuant to the ELCRA are analyzed under the same evidentiary framework as similar claims brought under Title VII, and Michigan courts follow federal civil rights case law to interpret them. *Jackson v. Quantex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999); *see also Sniecinski v.*

---

[4] At oral argument on this motion, Plaintiff's counsel attempted to withdraw her disparate treatment claim and also conceded that she could not demonstrate the requisite adverse employment action for her retaliation claim. Notwithstanding, the Court addresses each claim alleged in the Complaint.

*Blue Cross & Blue Shield of Michigan*, 666 N.W.2d 186, 192-95 (Mich. 2003); *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004).[5]

Both Title VII and ELCRA prohibit employers from discriminating against employees based on sex. *See* 42 U.S.C. 2000e-2(a)(1); Mich. Comp. Laws § 37.2102. Discrimination because of sex includes sexual harassment (hostile work environment) and disparate treatment (discrimination based on gender). *See, e.g.*, *Chambers v. Trettco, Inc.*, 614 N.W.2d 910, 915 (Mich. 2000); Mich. Comp. Laws § 37.2103(I); *Humenny*, 390 F.3d at 906.

**1. Hostile Work Environment**

Hostile work environment claims address workplaces "permeated with discriminatory intimidation, ridicule, and insult that are sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotations and citations omitted). In order to establish a prima facie case of a hostile work environment, a plaintiff must show that: (1) she is a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on her sex; (4) the harassment created a hostile work environment; and (5) the employer is vicariously liable. *Clark v. United Parcel*

---

[5] This Court notes that although sexual harassment claims under Title VII and Michigan's ELCRA have some important differences, those differences are not dispositive here. For example, "unlike Michigan's ELCRA, Title VII applies different standards for evaluating whether the employer as a whole is vicariously liable for the hostile work environment," depending upon whether the employee is harassed by a co-worker or a supervisor. *Clark v. United Parcel Svc., Inc.*, 400 F.3d 341, 349 (6th Cir. 2005). This is not dispositive in this matter because Defendant argues that Plaintiff cannot establish an essential element of her claim under Title VII or ELCRA in that she cannot show that the alleged conduct was sufficiently severe or pervasive enough to alter the conditions of her employment so as to create a hostile working environment.

*Serv., Inc.*, 400 F.3d 341, 347 (6th Cir. 2005). These requirements also apply to Plaintiff's ELCRA claim.[6]

In support of her hostile work environment claim, Plaintiff's Complaint alleges that the following conduct, *inter alia*, contributed to a hostile work environment: (1) being called a lesbian; (2) being given the finger; (3) having male officers belch in her face; (4) having another officer attempt to run her over in a vehicle; (5) being shunned; (6) being subjected to disparaging remarks; (7) failing to investigate her complaints of harassment; (8) having her parking space vandalized; (9) being assigned to patrol a dangerous part of the city without a partner; and (10) having a male officer grab his crotch and mock her. (Compl. ¶¶ 21, 28, 33, 44, 51-52.) In her deposition, Plaintiff also alleges: (1) that she was referred to as a "bitch," "cunt," and "white token"; (2) ridiculed in the hallway by other officers laughing, stopping their conversations as she approached, and blocking entrance and elevator doors; (3) was the victim of dismissive attitudes from other officers; (4) was almost run over by another officer in his car; and (5) was the subject of derogatory internet blogs. (Johnson Dep. at 41-44, 47-48, 53, 74, 98.)

Defendant contends that Plaintiff has failed to create a genuine issue of material fact with respect to the fourth element of her prima facie case because the alleged incidents, even if proven true, would not rise to the level of a hostile workplace claim: the allegations

---

[6] Under the ELCRA "[t]o establish [her] claim of hostile environment sexual harassment, Plaintiff must prove the following: (1) the employee belonged to a protected group; (2) the employee was subjected to communication or conduct on the basis of sex; (3) the employee was subjected to unwelcome sexual conduct or communication; (4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment; and (5) respondeat superior." *Chambers*, 614 N.W.2d at 915 (quoting *Radtke v. Everett*, 501 N.W.2d 155, 162 (Mich. 1993)).

are not sufficiently severe or pervasive to create a hostile work environment. (Def.'s Mot. at 15.)

"In determining whether the alleged harassment is sufficiently severe or pervasive ... the court must consider the totality of the circumstances." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999). *See also id.* at 564 ("[A] work environment viewed as a whole may satisfy the legal definition of an abusive work environment, for purposes of a hostile work environment claim, even though no single episode crosses the Title VII threshold."). "Isolated incidents, however, unless extremely serious, will not amount to discriminatory changes in the terms or conditions of employment." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000) "Among the factors to be considered are 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Clark*, 400 F.3d at 351 (quoting *Harris*, 510 U.S. at 23). "[T]he test for a hostile work environment has both objective and subjective components." *Williams*, 187 F.3d at 566. In order to be actionable, an environment must be one "that a reasonable person would find hostile or abusive," and the employee must "subjectively perceive the environment to be abusive." *Harris*, 510 U.S. at 21-22.[7] Thus, "[t]he plaintiff

[7] *Cf. Williamson v. BASF Corp.*, No. 05-74861, 2007 WL 172533, at *7 (E.D. Mich. Jan. 19, 2007) ("As to the fourth element, the Michigan Supreme Court has held that 'whether a hostile work environment existed shall be determined by whether a reasonable person, in the totality of circumstances, would have perceived the conduct at issue as substantially interfering with the plaintiff's employment or having the purpose or effect of creating an intimidating, hostile, or offensive employment environment.' *Radtke*, 501 N.W.2d at 167. Quoting, with approval, a decision by the United States Supreme Court, the Michigan Supreme Court further observed that:

[W]hether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the

must show that the working environment was both objectively and subjectively hostile." *Clark*, 400 F.3d at 351.

It is well-established that "[t]he prohibition of harassment on the basis of sex requires neither asexuality nor androgyny in the workplace; it forbids only behavior so objectively offensive as to alter the conditions of the victim's employment." *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81 (1998). *See also Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) ("Title VII, we have said, does not set forth a general civility code for the American workplace."). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998) (internal quotations and citations omitted). Such a limitation is required "to ensure that courts and juries do not mistake ordinary socializing in the workplace—such as male-on-male horseplay or intersexual flirtation—for discriminatory conditions of employment." *Oncale*, 523 U.S. at 81. Thus, courts should "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher*, 524 U.S. at 788 (internal quotation marks omitted).

Accepting Plaintiff's version of the facts as true, this Court concludes that Plaintiff cannot establish the fourth element of her prima facie case—that she was subjected to a

---

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

*Quinto v. Cross and Peters Co.*, 547 N.W.2d 314, 323 (Mich.1996) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22-23 (1993)).").

hostile work environment. Applying the required reasonableness test and considering the totality of circumstances, this Court examines the conduct that, according to Plaintiff, gives rise to her hostile environment sexual harassment claim: the instances described in the Complaint and the other events described in Plaintiff's deposition, each described above. Considering the frequency, severity, presence or absence of physical threats or humiliating behavior, whether merely offensive utterances were involved, and whether the objectionable conduct interfered with Plaintiff's work, this Court concludes that the alleged conduct was not severe or pervasive and thus fails to create a hostile working environment. *See Quinto*, 547 N.W.2d at 323.

Although such conduct demonstrates evidence of rudeness and incivility, such distastefulness does not rise to a level to form the basis of a hostile work environment claim.[8] First, the complained of acts are not pervasive:[9] the "actions lack the continuous nature of conduct the Sixth Circuit has deemed sufficient to constitute a hostile work environment." *Mahan v. Peake*, No. 07-15223, 2009 WL 174130, at *6 (E.D. Mich. Jan. 23, 2009). Second, Plaintiff's allegations lack the necessary severity.[10] *Id*. When Plaintiff's

---

[8] Even Plaintiff's allegation that another officer "grabbed his crotch and shook his penis and mocked" her, does not rise to the requisite level of severity or pervasiveness. *See, e.g., Gwen v. Regional Transit Authority*, 7 Fed. App'x 496, 501 (6th Cir. 2001) (holding that a co-worker who twice exposed himself to the plaintiff did not create a hostile work environment).

[9] For example, Plaintiff claims to have been called "bitch," "cunt," and "white token," but she never actually heard these statements being made nor can she offer any evidence that they were repeated on more than one occasion.

[10] For example, having a bad word directed toward you, feeling dismissed and isolated from other officers, having someone belch in your face, and having coworkers block an elevator door are not the types of behavior that Title VII or the ELCRA was intended to address.

allegations are compared to other cases where the plaintiff showed the existence of a hostile workplace, it becomes clear that she has not made a prima facie showing of hostile work environment. *See id.* Finally, Plaintiff has presented no evidence, beyond her conclusory allegations,[11] that any of the alleged objectionable conduct interfered with her work performance.[12]

Plaintiff has failed to present sufficient evidence such that a reasonable juror could find an actionable hostile work environment. Accordingly, Plaintiff cannot establish a prima facie case for sexual harassment under the theory of hostile work environment.

### 2. Disparate Treatment Claim

To establish a prima facie case of a gender discrimination under either Title VII or the ELCRA, Plaintiff must show that she was: (1) a member of a protected class; (2) subject to an adverse employment action; (3) qualified for the job; and (4) treated differently than similarly situated male employees for the same or similar conduct. *Humenny*, 390 F.3d at

---

[11] Plaintiff, in fact, testified in her deposition that she believed other officers were jealous of her appointment by former Mayor Williamson to the Citizens Service Bureau (CSB) and acted out against her for that reason.

> Q: ... do you agree that there may be some resentment or animosity toward you because of your appointment to the CSB?
> A: I believe there was jealousy because there was a pay increase, yes.
>
> Q: Do you think that this jealousy that was being felt by your peers or colleagues resulted in any mistreatment towards you?
> A: I believe that it could have contributed, but I believe—what I know is the male officers were not subjected to what I was subjected to because of that.

(Johnson Dep., Def.'s Mot., Ex. 10 at 60.)

[12] Lock also testified that, in his opinion, Plaintiff was "a good officer." (Lock Dep., Def.'s Mot., Ex. 12 at 37.)

906; *Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 521 (Mich. 2001). These requirements also apply to Plaintiff's ELCRA claim.[13]

A plaintiff may establish a prima facie case by offering either direct[14] evidence that the defendant intentionally discriminated against her because of her gender or by presenting circumstantial evidence, following the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting analysis. *See Graham v. Ford*, 604 N.W.2d 713, 717 (Mich. Ct. App. 1999). In this case, Plaintiff has presented no direct evidence of discrimination nor has Plaintiff argued that any direct evidence support her claims. Because Plaintiff is attempting to establish her discrimination claims with circumstantial evidence, the burden-shifting analysis set forth in *McDonnell Douglas* is applied.

The *McDonnell Douglas* burden-shifting framework consists of three stages. The plaintiff must first demonstrate a prima facie case of discrimination. *See Clack v. Rock-Tenn Co.*, 304 Fed. App'x 399, 402 (6th Cir. 2008). If the plaintiff makes this showing, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the challenged employment action. *See Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000). After the employer articulates a legitimate, non-discriminatory reason, the

---

[13] Under the ELCRA "a plaintiff may establish a prima facie case of employment discrimination by showing (1) that the plaintiff was a member of a protected class, (2) that an adverse employment action was taken against the plaintiff, (3) that the plaintiff was qualified for the position, and (4) that the plaintiff was replaced by one who was not a member of the protected class." *Feick v. County of Monroe*, 582 N.W.2d 207, 209-10 (Mich. Ct. App. 1998).

[14] "Direct evidence is evidence that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Systems, Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). Although the alleged discriminatory comments may be rude, inappropriate and mean, they do not show gender discrimination without making an inference of some kind.

plaintiff must come forward with admissible evidence showing that the employer's proffered

explanation is simply a pretext for unlawful discrimination. *See id.* Moreover, the business

judgment of the employer may not be questioned because the issue is not whether the

decision was wrong or mistaken, but whether the decision was discriminatory. *See Hartsel*

*v. Keys*, 87 F.3d 795, 801 (6th Cir. 1996).

Defendant argues that Plaintiff's disparate treatment claim fails for two reasons. First,

Defendant contends that Plaintiff has failed to make a prima facie case of discrimination

by failing to establish that she was replaced by a male or that she was treated differently

than comparable males under the circumstances. Alternatively, Defendant argues that

Plaintiff cannot show that Defendant's proffered non-retaliatory reason for her discharge

was a pretext for disparate treatment. This Court agrees, and discusses each in turn.

### a. Plaintiff Cannot Establish a Prima Facie Case of Discrimination

Plaintiff's claim of gender discrimination consists of, *inter alia*, the following allegations

contained in the complaint:

> 42. The idea of a female in the position of Deputy Chief, however, was
> opposed by the police officers and was rescinded by the new mayor (Michael
> K. Brown) and police chief (Alvern Locke) [sic].

(Compl. ¶ 42.) Plaintiff's response to Defendant's motion adds:

> However, the actions of members of the department got markedly worse as
> she moved up through the ranks. She had the opportunity to observe how
> she was treated by fellow officers compared to the way male officers were
> treated. She had the opportunity to observe the way other female officers
> were treated compared to the way male officers were treated. While she
> admits that she does not know what was in the minds of each of the officers,
> she does know that there was a difference in her treatment and that the
> treatment differed based on gender. (Ex. 1, 59)

(Pl.'s Resp. at 6.)

The harassment experienced by plaintiff was based on her sex. ... Plaintiff cites incidents involving a number of officers and incidents. In her internal complaint to defendant, plaintiff details instances of intimidation on the part of Officer Roberts who would block her entrance to the elevator. Roberts did not block the elevator for male officers. Similarly, plaintiff stated that Officer Tolbert constantly harassed and intimidated her. Examples include calling plaintiff a "lesbian bitch," yelling her name as he walked by, and attempting to run her over with his personal vehicle. ... The term "lesbian" refers to a female only, and is clearly derogatory, and Tolbert did not display the same level of hostility toward men. Officer Petrich's conduct can also be construed as harassment based on plaintiff's sex, including belching in her face and shaking his crotch at her. These officers did not treat similarly situated males in the same manner.

(*Id.* at 17-18.)

Defendant argues, and this Court agrees, that Plaintiff has failed to create a genuine issue of material fact with respect to the fourth element of her prima facie case because—assuming *arguendo* that the loss of Plaintiff's provisional appointment as deputy chief is an "adverse employment action"—Plaintiff cannot establish that she was replaced by a male or that she was treated differently than comparable males under the circumstances.[15] (Def.'s Mot. at 21.)

Despite Plaintiff's conclusory allegations[16] of gender discrimination, Plaintiff provides virtually no evidentiary support for her claims. Under Rule 56, the party opposing a motion for summary judgment "may not rely merely on allegations ... in its own pleading; rather,

---

[15] In response to the question: "And why do you think that that's because you're a woman?", Plaintiff testified: "I couldn't tell you if that's exactly–but I am a woman and that's what they were doing to me." (Johnson Dep., Def.'s Mot., Ex. 10 at 53.)

[16] Nowhere in her testimony does she point to evidence, beyond her vague and conclusory allegations, that the other officers were treated differently because they were male, nor does she put forth evidence that she was similarly situated to male officers. On both grounds, the allegations do not rise to the level of gender discrimination prohibited under Title VII or the ELCRA.

its response must ... set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48. If the disputed evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted). Plaintiff has not met this standard, and Defendant is entitled to summary judgment in its favor.

### b. Defendant Articulated a Legitimate, Non-Discriminatory Reason

Even if Plaintiff had established a prima facie case of gender discrimination, Defendant argues that it would nonetheless be entitled to summary judgment. This is so, Defendant argues, because it has presented evidence supporting a legitimate, non-discriminatory reason for the adverse employment action—the end of Plaintiff's provisional deputy chief position—and because Plaintiff has not presented evidence showing that such a reason for the challenged employment action was a pretext for discrimination.

This Court finds that Defendant has presented evidence supporting the legitimate, non-discriminatory reason for the employment action Plaintiff challenges. Specifically, Defendant has presented evidence that the position was eliminated due to budgetary reasons.[17] Moreover, all deputy chief positions were eliminated including Plaintiff's position

---

[17] In response to the question: "You said there was an overabundance of ranks. What do you mean by that?", Lock testified: "... I had several deputy chiefs, I–in fact, I had two deputy chiefs, I had captains and I had lieutenants and I had other officers in other positions that were not needed." (Lock Dep., Def.'s Mot., Ex. 12 at 12.) And, in response to the question: "And so what did you do about those positions?", Lock testified: "I started eliminating those positions." (*Id.*)

as well as another male deputy chief, Tim Johnson. Both deputy chiefs, Tim Johnson and Plaintiff Connie Johnson, were issued memos on the same day. (*See* Lock Dep., Def.'s Mot., Ex. 12 at 40.) Chief Lock, in his deposition, also testified that gender had no bearing on his decision to eliminate the deputy chief positions. (*See* Lock Dep., Def.'s Mot., Ex. 12 at 48.)

### c. Plaintiff Cannot Establish that Reason Proffered is Pretext

Because Defendant satisfied its burden—showing that it had a legitimate, non-discriminatory reason for Plaintiff's termination—the burden of production now returns to Plaintiff. *Univ. of Cincinnati*, 215 F.3d at 573. To meet her burden, Plaintiff is required "to show the existence of evidence sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff." *Hazle*, 628 N.W.2d at 526 (internal quotation and citation omitted).

Plaintiff may establish pretext and "refute the legitimate, nondiscriminatory reason articulated by an employer to justify an adverse employment action by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003) (internal quotation and citation omitted). Plaintiff "may also demonstrate pretext by offering evidence which challenges the reasonableness of the employer's decision to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008) (internal quotation and citation omitted). "Regardless of which option is used, the plaintiff retains the ultimate burden of producing sufficient evidence from which the jury could reasonably reject

[the defendant's] explanation and infer that the defendant[] intentionally discriminated against [her]." *Kroger Co.*, 319 F.3d at 866 (internal quotation and citation omitted). Plaintiff has failed to meet that burden here.

There is no genuine issue of material fact regarding pretext. Plaintiff has not presented evidence showing Defendant's reason for eliminating the deputy chief positions has no basis in fact. Likewise, Plaintiff presents no evidence showing that Defendant's conclusion, that the department was experiencing financial difficulties and that cuts (including the elimination of the deputy chief positions) were necessary, did not actually motivate Defendant's decision to terminate Plaintiff's provisional appointment as deputy chief. Even if Plaintiff had established a prima facie case of discrimination, she has not come forward with evidence that would allow a reasonable juror to find that the legitimate non-discriminatory reason Defendant asserted for its challenged actions was a pretext for discrimination. Accordingly, her claim of gender discrimination fails.

### B. Retaliation Claim

Plaintiff also claims that Defendant violated Title VII and Michigan's ELCRA by retaliating against her for filing a "formal grievance" or the EEOC complaints.[18] Title VII and the ELCRA also protect employees from retaliation for filing harassment (or other civil rights) claims. For example, the ELCRA states that an employer may not "[r]etaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or

---

[18] The EEOC complaints were filed subsequent to Plaintiff being informed that her provisional appointment as deputy chief had ended and subsequent to her election for medical leave.

participated in an investigation, proceeding, or hearing under this act." Mich. Comp. Laws § 37.2701(a).

To establish a prima facie case of retaliation, Plaintiff must show that (1) she was engaged in a protected activity; (2) Defendant knew that Plaintiff did so; (3) Defendant thereafter took an adverse employment action against her; and (4) there was a causal connection between the protected activity and the adverse employment action. *See Morris*, 201 F.3d at 792. The same burden-shifting analysis that applies to discrimination claims also applies to retaliation claims. *Williamson*, 2007 WL 172533, at *8. If Plaintiff establishes a prima facie case of retaliation, Defendant must articulate a legitimate, non-discriminatory reason for the adverse employment action. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 793 (6th Cir. 2000). Because the Plaintiff bears the burden of persuasion throughout, she must then show that Defendant's proffered reason for the adverse employment decision was a pretext for retaliation.

Defendant argues that Plaintiff's retaliation claim fails for two reasons. First, Defendant contends that Plaintiff has failed to establish a prima facie case of retaliation by failing to show a causal connection between her protected activity and the alleged adverse employment action. Alternatively, Defendant argues that Plaintiff cannot show that Defendant's proffered non-retaliatory reason for the adverse employment action was a pretext for retaliation. This Court agrees, and discusses each in turn.

### 1. Prima Facie Case

Plaintiff's claim of retaliation consists of, *inter alia*, the following allegations contained in the complaint:

18. Plaintiff Johnson, along with her fellow inspectors, became targeted by the Flint Police Officers Associations' action to oust them from the Union. While all Inspectors felt the hostility of the Department, as the Unit's only female inspector, Officer Johnson received the brunt of the officers' reprisals. ...

25. Plaintiff Johnson made complaints to her supervisors concerning this discriminatory treatment yet no investigation or appropriate remedial action was taken by Defendant.

26. Plaintiff Johnson was retaliated against by Defendant for making such complaints by increased hostility from her co-workers. ...

39. Following her complaints of discrimination and harassment, Plaintiff Johnson became the victim of additional hostility and retaliation. ...

47. In response, Plaintiff Johnson asked Chief Locke [sic] if he was aware of her discrimination complaint. He acknowledged that he was. ...

54. Chief Lock's actions are a clear indication of the Defendant's retaliatory intent. ...

56. Subsequent to the filing of the Charge of Discrimination, Defendant has continued to retaliate against Plaintiff Johnson.

57. Plaintiff Johnson's gun, badge, and keys were taken away in a manner contrary to past practice.

64. Flint's attorney, Frederick Champnella agreed with Plaintiff Johnson that she was being retaliated against. He and Diedre Pitts attempted to secure Plaintiff Johnson an early retirement package so that she could escape the Department's retaliatory and hostile environment. ...

73. Plaintiff Johnson was subjected to a hostile work environment, demotion, and different terms and conditions of her employment by Defendant in retaliation for her opposition to civil rights violations.

(Compl. ¶¶ 18, 25-26, 39, 47, 54, 56, 64, 73, 85.) Plaintiff's response to Defendant's motion adds:

Again, the Plaintiff has outlined severe and continuous acts that were enhanced with each promotion she received, and each complaint she made.

(Pl.'s Resp. at 21.)

Defendant argues that Plaintiff cannot establish the fourth element of her retaliation claim: that there was a causal connection between the protected activity and the adverse employment action. "To establish causation, the plaintiff must show that [her] participation in activity protected by the [ELCRA] was a 'significant factor' in the employer's adverse employment action, not just that there was a causal link between the two." *Barrett v. Kirtland Comm. College*, 628 N.W.2d 63, 70 (Mich. Ct. App. 2001) (citing *Jacklyn v. Schering-Plough Healthcare Products Sales Corp.*, 176 F.3d 921, 929 (6th Cir. 1999); *Polk v. Yellow Freight Sys., Inc.*, 801 F.2d 190, 199 (6th Cir. 1986)). "In order to show a causal connection, a plaintiff must produce sufficient evidence from which an inference can be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action." *Allen v. Michigan Dep't of Corrections*, 165 F.3d 405, 413 (6th Cir. 1999).

Plaintiff has not offered sufficient evidence to show a causal connection between her protected activity and the elimination of the deputy chief positions besides the temporal proximity of her "formal grievance" and the notice that her provisional appointment as deputy chief had ended.

> Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.

*Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). On November 10, 2008, Plaintiff first notified Defendant of the alleged discrimination by filing a "formal

grievance." On February 19, 2009, approximately fourteen weeks later, Lock signed a layoff notification for Plaintiff indicating that her provisional appointment as deputy chief was ending and that she was entitled to "bump" back into the position of patrol officer. Because sufficient time elapsed between the time when Defendant learned of an alleged protected activity and Plaintiff's notification, temporal proximity alone is insufficient to establish causation. *See, e.g.*, *Woods v. Washtenaw Hills Manor Inc.*, No. 07-15420, 2009 WL 728537, at *15 (E.D. Mich. Mar. 19, 2009). Further, Lock testified that he was not aware of Plaintiff's grievance at the time he made the decision to eliminate the deputy chief positions and, in making that decision, the fact that Plaintiff was a woman was simply not a factor in his decision—he made the decision to eliminate the deputy chief positions due to the department's "dire" financial position. (Lock Dep., Defs.' Mot., Ex. 12, at 48.)

Plaintiff has provided no other corroborating evidence to demonstrate causation.[19] The only evidence of causation produced by Plaintiff—the temporal proximity of her internal complaint and her termination—fails to establish causation. Thus, Plaintiff has not presented sufficient evidence from which a reasonable juror could conclude that a causal connection exists between the protected activity and the adverse employment action. Accordingly, Plaintiff has failed to establish this her prima facie case of retaliation against Defendant.[20]

---

[19] In fact, in response to the question: "So, right now what I'm really concerned about is what you–tangible concrete employment actions that you feel have been taken against you by the City because you're a woman," Plaintiff testified: "As far as losing positions, I can't say that there is because I was a woman." (Johnson Dep., Def.'s Mot., Ex. 10 at 57.)

[20] Plaintiff also claims that she was the victim of additional instances of hostility in retaliation for the complaints she made. Plaintiff, however, has not offered any evidence of a causal relationship between any complaint she made and subsequent alleged

## 2. Defendant Articulated a Legitimate, Non-Discriminatory Reason

Even if Plaintiff had established a prima facie case of retaliation, Defendant argues that it would nonetheless be entitled to summary judgment. This is so, Defendant argues, because it has presented evidence supporting a legitimate, non-discriminatory reason for the adverse employment action and because Plaintiff has not presented evidence showing that such a reason for the challenged employment action was a pretext for discrimination. As discussed above, this Court finds that Defendant has presented evidence supporting the legitimate, non-discriminatory reason for the employment action Plaintiff challenges.

## 3. Plaintiff Cannot Establish that Reason Proffered is Pretext

Because Defendant satisfied its burden—showing that it had a legitimate, non-discriminatory reason for Plaintiff's termination—the burden of production now returns to Plaintiff. *Univ. of Cincinnati*, 215 F.3d at 573. Again, and as discussed above, there is no genuine issue of material fact regarding pretext. Even if Plaintiff had established a prima facie case of retaliation, she has not come forward with evidence that would allow a reasonable juror to find that the legitimate non-discriminatory reason Defendant asserted

---

instances of hostility (i.e., blocking elevator door, belching).

Retaliatory harassment can satisfy the adverse employment action required to establish a valid retaliation claim under Title VII and the ELCRA. *See, e.g., Morris*, 201 F.3d at 791; and *Meyer v. City of Center Line*, 619 N.W.2d 182, 189 (Mich. 2000). Severe or pervasive harassment is required in order to state a valid claim on these grounds. *Morris*, 201 F.3d at 792; *Meyer*, 619 N.W.2d at 189. "A bruised ego, mere inconvenience or an alteration of job responsibilities is not enough to constitute an adverse employment action." *Smith v. City of Salem*, 378 F.3d 566, 575-76 (6th Cir. 2004) (citing *White v. Burlington Northern & Santa Fe R.R.*, 364 F.3d 789, 797 (6th Cir. 2004)).

Plaintiff's claim for retaliatory harassment fails as she has not provided sufficient evidence that she suffered severe or pervasive levels of harassment. As discussed above, the rude and distasteful comments and behavior alleged does not rise to the requisite level.

for its challenged actions was a pretext for discrimination. Accordingly, her claim of retaliation fails.

### C. WPA Violation

Plaintiff claims that Defendant violated the Michigan Whistleblowers' Protection Act (WPA), Mich. Comp. Laws § 15.361, *et seq.* The WPA provides, in relevant part:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

Mich. Comp. Laws § 15.362.

To state a prima facie case of discrimination or retaliation under the WPA, Plaintiff must show that: "(1) [she] was engaged in protected activity as defined by the act, (2) [she] was discharged or discriminated against, and (3) a causal connection exists between the protected activity and the discharge or adverse employment action." *West v. General Motors Corp.*, 665 N.W.2d 468, 471-72 (Mich. 2003). Similar to Title VII and the ELCRA, a burden shifting analysis applies to claims brought pursuant to the WPA.

> It is a burden of proof analysis. Under it, plaintiff has the burden of proving that he was engaged in protected conduct and that his participation in that conduct was a motivating factor in the decision to terminate him. The burden then shifts to the employer to come forward with evidence demonstrating that plaintiff's termination was for a legitimate reason. If the employer states a legitimate reason, the employee may still prevail if he demonstrates that the reason was mere pretext for his dismissal.

*Eckstein v. Kuhn*, 408 N.W.2d 131, 134 (Mich. Ct. App. 1987).

Defendant argues that Plaintiff's WPA claim fails for two reasons. First, Defendant contends that Plaintiff has failed to establish a prima facie case under the WPA by failing to show the requisite level of causation. Alternatively, Defendant argues that Plaintiff cannot show that Defendant's proffered non-retaliatory reason for the adverse employment action was a pretext. This Court agrees, and discusses each in turn.

### 1. Prima Facie Case

Plaintiff claims that she was retaliated against because she was called to testify before the grand jury on August 27, 2008 when the U.S. attorney was seeking an indictment of former police chief David Dicks. Plaintiff's claim under the WPA consists of, *inter alia*, the following allegations contained in the complaint:

> 59. In addition to the aforementioned incidents of gender discrimination and retaliation, Plaintiff Johnson was retaliated in connection with Grand Jury testimony she provided on August 27, 2008.

> 60. Plaintiff testified truthfully with regard to certain Internal Affairs investigation files.

> 61. On information and belief, Lieutenant Scott Sutter and others hoped that her testimony that certain files were missing would accelerate the termination of the then current Chief David Dicks, hasten the removal of the then Mayor Donald Williamson, and subject Plaintiff Johnson to possible criminal charges.

> 62. Those goals were thwarted by Plaintiff Johnson's truthful testimony.

> 63. As a result, Sutter and other prevailed upon Chief Locke [sic] to take adverse
> employment actions against Plaintiff Johnson.

> 90. Defendant violated the Whistleblowers' Protection Act, M.C.L.A. 15.361 *et seq.* when it discriminated against Plaintiff Johnson as described regarding the terms, benefits, conditions, and privileges of her employment because she testified and otherwise participated in an investigation, hearing, or inquiry held by that public body, or a court action.

(Compl. ¶¶ 59-63, 90.) Plaintiff's response to Defendant's motion adds:

> On August 27, 2008, Ms. Johnson was required to give testimony before a Grand Jury with regard to certain missing documents from Internal Affairs. Upon going in to testify she was inside about one hour and forty minutes. Attorney Champnella accompanied her to the hearing. After the hearing and up to the time of her leaving on medical leave the shunning and the open animosity by officers in the Department got worse. There was an increase in blogs that were critical of her. ...
>
> Here there is not only a temporal relationship between Ms. Johnson's testimony and an increase in hostility, there is evidence of the increase in hostility as well.

(Pl.'s Resp. at 14-15, 22.) Plaintiff also testified in her deposition that:

> Q: Do you think that your removal from the deputy chief position was in any way in retaliation for your testimony before the Grand Jury?
> A: I don't know.
>
> Q: Do you have any facts to support the claim that it was in retaliation for your–
> A: I don't have facts, so to speak.
>
> Q: So, getting back to the complaint, and we're talking about what happened to you in retaliation for your testimony in front of the Grand Jury, you said that you had heard that you had been called a liar.
> A: Uh-huh.
>
> Q: What else happened to you in retaliation for your Grand Jury testimony?
> A: Just the same kind of things; the people making comments, you know the actions of laughing and, you know, turning their heads and—
>
> Q: These are the things, the same things that you attribute to being a woman?
> A: But it was more so. It got even worse, yeah, it did, it got worse. Because the word around the station was I had lied.

(Johnson Dep., Def.'s Mot., Ex. 10 at 76.)

Defendant argues that Plaintiff cannot establish the third element of her WPA claim:

that a causal connection exists between the protected activity and the discharge or adverse

employment action. To prevail, Plaintiff must show that her employer took adverse

employment action *because of* Plaintiff's protected activity, but she has merely shown that Defendant eliminated the deputy chief positions *after* the protected activity occurred. Plaintiff has failed to demonstrate that the adverse employment action was in some manner influenced by the protected activity. Plaintiff has not offered sufficient evidence to show a causal connection between her protected activity and the elimination of the deputy chief position besides the temporal proximity of her complaints and the notice that her provisional appointment as deputy chief had ended. Although the adverse employment action about which Plaintiff complains occurred after she filed a "formal grievance"

> such a temporal relationship, standing alone, does not demonstrate a causal connection between the protected activity and any adverse employment action. Something more than a temporal connection between protected conduct and an adverse employment action is required to show causation where discrimination-based retaliation is claimed.

*West v. General Motors Corp.*, 665 N.W.2d 468, 472-73 (Mich. 2003). As discussed above, sufficient time elapsed between the time when Defendant learned of an alleged protected activity and Plaintiff's notification, and temporal proximity alone is insufficient to establish causation. *See, e.g.*, *id.* at 472-74.

Plaintiff has provided no other corroborating evidence to demonstrate causation. In fact, Plaintiff testified that the only retaliation she experienced as a result of her Grand Jury testimony was her removal from the deputy chief position.

> Q: You're claiming that you were subjected to harassing behavior–
> A: Yes.
>
> Q: –because of your–
> A: Yes.
>
> Q: –Grand Jury testimony?
> A: Yes.

> Q: ... But you don't have any evidence or facts to support the claim that the City took any tangible employment action of any kind against you that affected pay, benefits as a result of your Grand Jury testimony?
> A: The only thing I can say is the deputy chief's position, I was demoted.
>
> Q: But you testified–
> A: And that was afterwards.
>
> Q: But you testified a moment ago that you didn't have nay facts to connect those two things together.
> A: No. I can just testify that it happened after.
>
> Q: Proximity in time from the testimony. You make the connection between the proximity in time.
> A: Yes.
>
> Q: Anything else?
> A: No.

(Johnson Dep., Def.'s Mot., Ex. 10 at 77.) The only evidence of causation produced by Plaintiff—the temporal proximity of her internal complaint and her termination—fails to establish causation. And, as discussed above, Lock testified that he was not aware of Plaintiff's grievance at the time he made the decision to eliminate the deputy chief positions and that he made the decision due to the department's financial position. Further, there is no evidence that Lock was even aware that Plaintiff testified before the Grand Jury. *Roberson v. Occupational Health Centers of America, Inc.*, 559 N.W.2d 86, 88 (Mich. Ct. App. 1996) (holding that a plaintiff must show that the defendant had "objective notice of a report or threat to report by the whistleblower" to establish causation) (internal quotation and citation omitted).

> Other plaintiffs failed to show a causal connection because the evidence indicated the employer either terminated plaintiff before finding out about the protected activity or because the employer knew of the activity but considered it inconsequential. *West*, 665 N.W.2d at 473 (finding summary judgment appropriate because the supervisors did not care about plaintiff's activity and were not part of the decision to terminate plaintiff); *Roberson v.*

> *Occupational Health Ctrs. of Am., Inc.*, 220 Mich.App. 322, 559 N.W.2d 86,
> 88 (1996) (finding summary judgment appropriate because the supervisor
> terminated plaintiff before finding out about the activity).

*Thompson v. Aramark School Support Services, Inc.*, 490 F.3d 506, 510 (6th Cir. 2007).[21]

Plaintiff has not presented sufficient evidence from which a reasonable juror could conclude

that a causal connection exists between the protected activity and the adverse employment

action. Accordingly, Plaintiff has failed to establish this her prima facie case of retaliation

against Defendant.

## 2. Defendant Articulated a Legitimate, Non-Discriminatory Reason

Even if Plaintiff had established a prima facie case of retaliation under the WPA,

Defendant argues that it would nonetheless be entitled to summary judgment. This is so,

Defendant argues, because it has presented evidence supporting a legitimate, non-

discriminatory reason for the adverse employment action and because Plaintiff has not

presented evidence showing that such a reason for the challenged employment action was

---

[21]

> A case in which a close temporal relationship supported the plaintiff's claim
> is *Henry v. Detroit*, 234 Mich.App. 405, 594 N.W.2d 107 (1999). But unlike
> plaintiff, the plaintiff in *Henry* also presented evidence that his superior
> expressed clear displeasure with the protected activity engaged in by the
> plaintiff. In contrast to *Henry*, plaintiff has not shown any reaction or conduct
> on the part of his supervisors that reasonably suggests that they were upset
> by the fact that plaintiff reported an assault to the police. Moreover, contrary
> to the view of the Court of Appeals, the evidence does not show that
> plaintiff's record was "impeccable" or "unblemished" before the Reeves
> incident or that the discipline imposed was seemingly undeserved as it was
> in *Henry.* The fact that a plaintiff engages in a "protected activity" under the
> Whistleblowers' Protection Act does not immunize him from an otherwise
> legitimate, or unrelated, adverse job action.

*West*, 665 N.W.2d at 473.

a pretext for discrimination. Again, and as discussed above, this Court finds that Defendant has presented evidence supporting the legitimate, non-discriminatory reason given for the employment action Plaintiff challenges.

### 3. Plaintiff Cannot Establish that Reason Proffered is Pretext

Because Defendant satisfied its burden—showing that it had a legitimate, non-discriminatory reason for Plaintiff's termination—the burden of production now returns to Plaintiff. Again, and as discussed above, there is no genuine issue of material fact regarding pretext. Even if Plaintiff had established a prima facie case of retaliation under the WPA, she has not come forward with evidence that would allow a reasonable juror to find that the legitimate non-discriminatory reason Defendant asserted for its challenged actions was a pretext for discrimination. Accordingly, her WPA claim also fails.

## IV. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: May 13, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 13, 2010, by electronic and/or ordinary mail.


s/Carol A. Hemeyer
Case Manager